## A98A0484. TUCKER v. THE STATE.
### (504 SE2d 250)

RUFFIN, Judge.

A jury found Keith Edward Tucker guilty of disorderly conduct in violation of OCGA § 16-11-39 (a) (3). Tucker appealed, asserting that there was insufficient evidence to support the jury's verdict and that the trial court erred in overruling his "General and Special Demurrer" to the accusation. For reasons which follow, we affirm.

Viewed in a light most favorable to support the verdict, the evidence shows that on the evening of July 6, 1996, Tucker was seated at the bar of Norman's Landing Restaurant in Forsyth County. The restaurant, which seats approximately 200 people, was crowded and 15 to 20 customers were waiting at the bar for a table. Tucker was drinking at the bar and became loud and disruptive.

According to John Grayborn, a customer who was seated with his wife at the bar in close proximity to Tucker, Tucker was making comments of a highly sexual nature regarding women who were working at the bar. Grayborn testified that Tucker was being so obscene that people in the bar were leaving. Grayborn recalled that on one instance Tucker said " '[t]hese f---ing c--ts in here, I don't care what they think, I can say whatever I want.' " Grayborn testified that he asked Tucker on numerous occasions to refrain from this offensive conduct. According to Grayborn, Tucker responded " 'I can say whatever the f--- I want to say.' " Grayborn testified that if Deputy Sheriff Gene Hodge, who was providing security for the restaurant that evening, had not placed Tucker under arrest, "I was going to escort him outside myself. And, uh, if I may be frank, slap the taste out of his mouth."

Deputy Hodge testified that when he arrived at Norman's Landing at approximately 9:00 p.m., the bar manager advised him that Tucker was being loud and obnoxious. According to Hodge, Tucker grew increasingly louder and used words and phrases like " 'f---in,' " " 'f--- you,' " " 'd--n,' " and " 'g--d--n.' " Hodge noticed several female customers moving away from the bar and so decided to speak with Tucker. Hodge tapped Tucker on the shoulder, at which time Tucker turned around and placed his hand on Hodge's shoulder. Tucker would not remove his hand, despite Hodge's requests, and stated several times to Hodge, " 'Buddy, we need to talk about this.' " According to Hodge, Tucker became hostile, loud and argumentative, telling Hodge that he had not been doing anything wrong and he was not going to leave. After this conversation, Deputy Hodge went to the hostess station to see if Tucker would calm down. But, according to Hodge, Tucker continued to be loud and curse. Hodge testified that at that time, he noticed that Grayborn "was about ready to deck [Tucker]," and he felt he needed to act to stop a fight. Accordingly,

Hodge asked Tucker to leave the bar and then placed Tucker under arrest for disorderly conduct.

1. Tucker asserts that the trial court erred in overruling his "General and Special Demurrer" to the State's amended accusation. We disagree.

The record shows that the State filed an amended accusation on January 17, 1997. The amended accusation charged that on July 6, 1996, Tucker engaged in disorderly conduct. The accusation alleged that Tucker violated OCGA § 16-11-39 (a) (3), which provides that a person commits the offense of disorderly conduct when such person "[w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called 'fighting words[.]' "

Tucker submitted his "General and Special Demurrer" on January 29, 1997, after the trial had commenced and the jury was impaneled. In the demurrer, Tucker alleged that the amended accusation "fails adequately to charge [him] with any offense against the laws of the State of Georgia[,]" and "fails to adequately notify [him] that he could be convicted of disorderly conduct under the laws of the State of Georgia." In support of his demurrer, Tucker argued at trial that the accusation did not adequately specify the subsection of OCGA § 16-11-39 with which he was charged. These assertions in the demurrer and at trial relate to the validity of the accusation and thus were properly raised by general demurrer. See *Dillard v. State*, 147 Ga. App. 587, 588 (2) (249 SE2d 640) (1978) (" '[a] general demurrer challenges the very validity of the indictment and may be raised anytime[.]' ").

"Every [accusation] which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may be easily understood by the jury shall be deemed sufficiently technical and correct. [Cit.] The true test of the sufficiency of an [accusation] that will withstand a general demurrer is as follows: [i]f all the facts which the [accusation] charges can be admitted, and still the accused be innocent, the [accusation] is bad. . . ." (Punctuation omitted.) *Dunbar v. State*, 209 Ga. App. 97, 98 (2) (432 SE2d 829) (1993).

We find Tucker's claims at trial and in his general demurrer meritless. "The [accusation] follows the statutory language, and so is sufficient in substance. Moreover, [Tucker] could not admit to these allegations and still be innocent. [Accordingly, t]he trial court did not err in overruling his timely general demurrer to the [accusation.]" Id.

As stated above, the record further shows that Tucker orally argued at trial that the accusation did not specify to whom the fighting words were made.[1] By raising this issue, Tucker is either attacking the form of the accusation or is seeking more information. See *Dillard*, supra. " 'Exceptions which go to the form of an [accusation] must be made by special demurrer or motion to quash [Cits.]' [Cit.]" *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977). A special demurrer must be in writing and must " 'put its finger on the exact point of weakness.' " *Boatwright v. State*, 26 Ga. App. 67, 68 (105 SE 381) (1920); *Wilcox v. State*, 229 Ga. App. 227 (2) (493 SE2d 724) (1997). Furthermore, " 'a demurrer raising special objections to an [accusation] should be strictly construed against the pleader.' [Cit.]" *McElmurray v. State*, 76 Ga. App. 604, 606 (1) (47 SE2d 139) (1948).

Here, notwithstanding the title of Tucker's demurrer as a "General and Special Demurrer," he did not specifically assert that the form of accusation was improper because it did not state to whom the fighting words were uttered. Tucker's written demurrer, while raising general grounds, did not "put its finger on the exact point of weakness" as to the form of the indictment. See *Boatwright*, supra. Accordingly, Tucker did not properly raise this claim with proper specificity in a written, special demurrer. See id.; *Wilcox*, supra.

2. Tucker asserts on appeal that the evidence was insufficient to find him guilty of disorderly conduct in accord with OCGA § 16-11-39 (a) (3). We disagree.

Fighting words are defined as those words "by which their very utterance tend to incite an immediate breach of the peace." *Davenport v. State*, 184 Ga. App. 214 (361 SE2d 219) (1987). Fighting words include statements that injure or offend a particular audience and tend to provoke a retaliatory response. *Cunningham v. State*, 260 Ga. 827, 828 (400 SE2d 916) (1991). "[T]he use of 'fighting words' does not constitute *protected* speech under the First and Fourteenth Amendments to the United States Constitution or under Art. I, Sec. I, Par. V of the Georgia Constitution. Fighting words constitute one of those narrow speech areas not constitutionally protected." (Emphasis in original.) *State v. Klinakis*, 206 Ga. App. 318, 319 (1) (b) (425 SE2d 665) (1992); *Cunningham*, supra. Fighting words " 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' [Cit.]"

---

[1] On appeal, Tucker also claims that the accusation was faulty in that it did not state where the crime occurred or specify the language that allegedly amounted to fighting words. However, he failed to raise these issues below. "As this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court. [Cit.]" *Cheesman v. State*, 230 Ga. App. 525, 526 (2) (497 SE2d 40) (1998).

*Cunningham,* supra at 828. "The justification for regulating . . . fighting words is to preserve the peace in society." Id.

"In determining if words uttered are such as to incite an immediate breach of the peace, it is not necessary that the State prove the effect of the words upon a particular individual; that is, whether the individual to whom the words were addressed or in whose presence the words were spoken was incited to hostile action. [OCGA § 16-11-39 (a) (3)] makes no distinction between the types of persons to whom the words are uttered." *Davenport,* supra at 214-215; see also *Brooks v. State,* 166 Ga. App. 704, 705 (305 SE2d 436) (1983). "The jury is required only to determine that the words uttered would, as a matter of common knowledge, naturally tend to provoke a violent response. [Cit.]" *Evans v. State,* 188 Ga. App. 347 (1) (373 SE2d 52) (1988).

Moreover, in determining whether words constitute fighting words, "[t]he circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had 'a direct tendency to cause acts of violence' by [others]. 'Constitutional enforcement of even facially valid laws applied to "fighting words" now appears to depend as much on the factual circumstances surrounding a word's utterance as on the character of the word uttered.' [Cits.]" *Lamar v. Banks,* 684 F2d 714, 719 (11th Cir. 1982).

There is sufficient evidence in the instant case to find Tucker guilty of disorderly conduct under OCGA § 16-11-39 (a) (3). While seated at a crowded bar, Tucker, in a loud and boisterous voice, thrust obscenities upon innocent bystanders. He called women in the bar "f---ing c--ts" in conjunction with stating that the women could not prevent him from saying what he wanted to say. He utilized the phrase "f--- you" several times, and became hostile and argumentative when Deputy Hodge asked him to calm down. Given these surrounding circumstances, Tucker's response to Grayborn that he could say whatever the "f---" he wanted to say could constitute "fighting words" in accordance with OCGA § 16-11-39 (a) (3). Tucker's abusive and opprobrious words not only tended to provoke violent resentment, but in fact provoked Grayborn such that he was preparing to physically escort Tucker from the bar, and in Grayborn's words, "slap the taste out of his mouth."

"[T]he words used were likely to and did provoke violence and raised hostility in the minds of other customers in the [bar]. This reaction meets the test required to sustain a conclusion the words were indeed 'fighting' words. [Cits.]" *Davenport,* supra at 215. Accordingly, "[t]he evidence adduced at trial was sufficient to enable a rational trier of fact to find the defendant's guilt of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]." *Evans,* supra at 347 (defend-

ant's actions of calling police officer at traffic stop a "g-d--- liar" and telling other officers to "f--- o--" was sufficient to convict defendant of former version of OCGA § 16-11-39 (a) (3)). See also *Davenport*, supra (woman's language towards K-Mart security guard amounted to fighting words as they "invoked violence against herself and provoked passions in bystanders"); *Johnson v. State*, 143 Ga. App. 826 (240 SE2d 207) (1977) (defendant's statements to police officer in which he called her "bitch" and told her " 'I don't give a damn about you. I don't respect any m--- f--- women, especially policewomen' " amounted to "fighting words"); *Person v. State*, 206 Ga. App. 324 (1) (425 SE2d 371) (1992) (evidence supported conviction under former version of OCGA § 16-11-39 (1) where defendant cursed at officer and screamed in his face "I'm not going to any g--d---n jail and I'm not wearing any mother-f---g handcuffs." (Punctuation omitted.)) In so holding, we do not address whether a person's use of obscenities while talking to another in a normal voice which an eavesdropping bystander overhears and finds objectionable amounts to "fighting words" in violation of OCGA § 16-11-39 (a) (3).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 8, 1998.

*Bruce F. Morriss, Daniel Shim*, for appellant.
*Leslie C. Abernathy, Solicitor, Laura A. Janssen, Assistant Solicitor*, for appellee.