A05A0436. TURNER v. THE STATE.
(618 SE2d 607)

MILLER, Judge.

Convicted of obstruction and disorderly conduct, John Turner appeals. He contends that (1) the accusation was not sufficient to put him on notice of the charges against him, (2) the evidence was insufficient to sustain his convictions, and (3) the trial court erred in denying his motion to suppress. For the following reasons, we reverse Turner's conviction for disorderly conduct, but affirm his obstruction conviction.

1. Turner challenges the sufficiency of the evidence to sustain his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed that an officer had stopped a vehicle for speeding and was speaking with the driver when a truck drove by. As the truck passed, the driver of the truck, Turner, rolled down his window, yelled "you bastards," rolled his window back up, and continued down the road. The officer released the driver of the vehicle he had stopped for speeding. He then got into his patrol car, followed the truck, and initiated a traffic stop. As the officer attempted to write Turner a citation, Turner repeatedly got out of his truck, disobeying the officer's command to stay inside his vehicle. Turner was arrested and charged with disorderly conduct and obstruction.

(a) Turner argues that the evidence was insufficient to sustain his conviction for misdemeanor disorderly conduct, which carries a one-year sentence. We agree. OCGA § 16-11-39 (a) (3) provides:

> [a] person commits the offense of disorderly conduct when such person . . . [w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words."

The issue here is whether Turner's yelling the words "you bastards" as he drove by the officer constituted language so opprobrious or inherently abusive as to amount to "fighting words" that would incite an immediate breach of the peace. Turner was not engaged in a face-to-face confrontation with the officer tending to incite an immediate breach of the peace when the words were spoken. See *Cunningham v. State*, 260 Ga. 827, 831 (1) (400 SE2d 916) (1991) ("while language on a bumper sticker might provoke outrage, the face to face confrontation necessary to trigger the exception allowing regulation of 'fighting words' would be unlikely"); compare *Tucker v. State*, 233 Ga. App. 314, 316-318 (2) (504 SE2d 250) (1998) (defendant was hostile and shouted obscenities at innocent bystanders and police); *Brooks v. State*, 166 Ga. App. 704, 705-706 (305 SE2d 436) (1983) (gesturing at officer and yelling in a crowd of 150 people that cops are dogs). Instead, Turner continued to travel past the officer in his vehicle throughout this brief incident. Under these circumstances, Turner's name-calling while driving by the officer does not constitute "fighting words" within the meaning of the statute. Since Turner's remarks do not reach the level of "fighting words," his conviction for disorderly conduct cannot stand. See *Lundgren v. State*, 238 Ga. App. 425, 427 (518 SE2d 908) (1999).

As *Lundgren* makes clear, an appellate court faced with a conviction for disorderly conduct arising from the use of offensive language alone must examine not only the words used but also "the circumstances and context in which they were said." Id. at 427. In each of the cases cited by the dissent, the person using the offensive language did so in a face-to-face confrontation with the officer, and the opprobrious words amounted to far more than a one-word insult. In *Evans v. State*, 188 Ga. App. 347 (373 SE2d 52) (1988), after being stopped for a traffic violation, the defendant called one officer a " 'g. . . d. . . liar' " and told all the officers on the scene to " 'f. . . o. . . .' " Id. at

347 (1). In *Anderson v. State*, 231 Ga. App. 807 (499 SE2d 717) (1998), the defendant sought out the sheriff at an automobile dealership, called him a " 'no good son of a bitch' " to his face, and said that she " 'should . . . kick [his] ass.' " Id. In *Person v. State*, 206 Ga. App. 324 (425 SE2d 371) (1992), the defendant screamed in the officer's face that "I'm not going to any g___d___n jail and I'm not wearing any mother-f___g handcuffs," forcing him to call for back-up. (Punctuation omitted.) Id. at 325 (1). In all three of these cases, the language used was substantially more offensive and was directed to the officer's face in a threatening way, and would therefore tend to provoke either an immediate breach of the peace or a call for additional support.

The dissent cites *Bolden v. State*, 148 Ga. App. 315 (251 SE2d 165) (1978), for the contention that the word "bastard" is a fighting word. *Bolden* does not detail the circumstances surrounding the use of that offensive language, however. Id. at 315-316 (1), (4). In that case, the officer testified that the defendant called him " 'son of a bitch,' " " 'mother fucker,' " " 'pig,' " and " 'motherfucking pig' " as well as " 'bastard.' " Id. at 316 (4). Even *Bolden*'s scant summary of facts makes clear, however, that the insults were made in the officer's presence. This combination of a string of offensive words and its use in the officer's presence makes *Bolden* easily distinguishable from the case before us, in which one offensive word was yelled at a police officer from a passing vehicle.

While we cannot condone Turner's rude and disrespectful comments toward the police officer in this case, the conduct at issue here simply does not rise to the level of criminal conduct that would constitute "fighting words" under OCGA § 16-11-39 (a) (3). Accordingly, we are constrained to reverse Turner's conviction for disorderly conduct.

Since we reverse Turner's conviction for disorderly conduct, his remaining claims of error with regard to that charge are moot.

(b) Evidence that Turner repeatedly exited his vehicle against the officer's orders to remain seated in the vehicle was sufficient to sustain his conviction for misdemeanor obstruction, which also carries a one-year sentence. See OCGA § 16-10-24 (a); *Imperial v. State*, 218 Ga. App. 440, 441 (461 SE2d 596) (1995) (refusal to obey lawful command as officer attempted to secure crowded area was sufficient to support obstruction conviction); see also *Dudley v. State*, 264 Ga. App. 845, 846-847 (1) (b) (592 SE2d 489) (2003).

2. Turner argues that because the officer did not have reasonable suspicion to stop his vehicle, his obstruction charge cannot stand and the trial court should have granted his motion to suppress. An officer is justified in stopping a vehicle if he has a good faith belief that a crime has been committed in his presence. See *Maddox v. State*, 266

Ga. App. 838, 839 (1) (a) (598 SE2d 105) (2004). As the officer believed in good faith that Turner had committed the crime of disorderly conduct, the stop was justified in that it was based upon a reasonable suspicion of wrongdoing. See id.; *Dudley*, supra, 264 Ga. App. at 846 (1) (b); *State v. Murphy*, 246 Ga. App. 246, 246-247 (540 SE2d 231) (2000).

3. Turner contends that the accusation was not drawn with sufficient particularity to put him on notice of the charges against him. Count 2 of the accusation charged that Turner "knowingly and willfully obstruct[ed] or hinder[ed] . . . a law enforcement officer[ ] in the lawful discharge of his official duties." This was sufficient to apprise Turner of the acts of which he was accused. See *Reed v. State*, 205 Ga. App. 209, 210 (1) (422 SE2d 15) (1992) (accusation substantially in the language of the code is sufficient in form and substance).

*Judgment affirmed in part and reversed in part. Andrews, P. J., Smith, P. J., Ellington, Adams and Bernes, JJ., concur. Blackburn, P. J., dissents.*

BLACKBURN, Presiding Judge, dissenting.

Because the disparaging use of the word "bastard" to provoke a police officer has previously been determined to support a jury conviction for disorderly conduct in Georgia, we must either find that the evidence in this case was sufficient to support the jury's conviction of John Turner for this offense or overrule our previous holding. Accordingly, I must respectfully dissent.

In *Bolden v. State*,[1] we explicitly held that the word "bastard" may be included in those considered to be fighting words. In that case, we affirmed the defendant's conviction for disorderly conduct based on evidence that she called a police officer a "son of a bitch," "mother fucker," "pig," "mother-fucking pig," and a "bastard."

In reaching this holding, we explained:

While the United States Supreme Court has limited abusive and obscene language prohibition to "fighting words," and defines them as "words which by their very utterance inflict injury or tend to incite an immediate breach of the peace," *Chaplinsky v. New Hampshire*,[2] this test has not been interpreted to mean that the state must prove the effect of the words upon a particular individual; that is, whether the individual to whom the words were addressed was incited to action by their utterance. [OCGA § 16-11-39] makes no distinction between the types of persons to whom the words

---

[1] *Bolden v. State*, 148 Ga. App. 315, 316 (4) (251 SE2d 165) (1978).

[2] *Chaplinsky v. New Hampshire*, 315 U. S. 568 (62 SC 766, 86 LE 1031) (1942).

are uttered. The fact that a policeman admits that he is used to hearing obscene language during the performance of his duties is not a defense available to the defendant under this code section. The jury is only required to determine that the words uttered were those, "which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in his presence," naturally tend to provoke a violent response.

*Bolden*, supra at 316 (2).

In this case, while Officer Bruce was ticketing a motorist on the side of the road, Turner drove by and yelled a fighting word at him for no reason other than to provoke him. In response, Officer Bruce left the motorist he pulled over, who had commented on Turner's conduct, chased Turner, and arrested him for disorderly conduct. In *Evans v. State*,[3] we held that "[t]he jury is required only to determine that the words uttered would, as a matter of common knowledge, actually tend to provoke a violent response" (affirming the defendant's conviction for disorderly conduct). Under these facts, the jury properly "found that the words [Turner] used were likely to provoke violence in the mind of [Officer Bruce]," *Anderson v. State*[4] (affirming defendant's conviction for disorderly conduct based on evidence that she told the sheriff that he was a " 'no-good son of a bitch' " and she would "kick his 'ass' "). Therefore, the evidence was sufficient to support the verdict. See *Person v. State*[5] (affirming defendant's conviction for disorderly conduct for screaming at officer, "I'm not going to any g___d___n jail and I'm not wearing any mother-f___g handcuffs") (punctuation omitted).

Moreover, Turner's conviction in this case supports the underlying legislative purpose of our disorderly conduct law. That purpose is "to curtail criminal activity before it escalates into or causes immediate acts of actual violence." *Anderson*, supra. The action taken by Turner in this case is of a type that engenders violent road rage and could jeopardize not only the safety of the speaker and the victim, but every other driver sharing the road with them. As such, reversing Turner's conviction would undermine the statutory purpose of OCGA § 16-11-39.

For all of the above reasons, Turner's conviction for disorderly conduct must be affirmed.

---

[3] *Evans v. State*, 188 Ga. App. 347 (1) (373 SE2d 52) (1988).

[4] *Anderson v. State*, 231 Ga. App. 807, 809 (1) (499 SE2d 717) (1998).

[5] *Person v. State*, 206 Ga. App. 324, 325 (1) (425 SE2d 371) (1992).

The arguments and cases raised by the majority do not require a different result. As an initial matter, the majority's holding would require a reversal or disapproval of *Bolden*, supra.

Furthermore, although the majority cites *Brooks v. State*,[6] this case supports Turner's conviction. *Brooks* holds:

> [W]e find that pointing to Officer Glasgow and yelling to a large crowd of 150 to 200 people that "(t)his man here is a dog" is the type of language commonly called "fighting words" which "naturally tend to provoke violent resentment." See in this regard *Johnson v. State*,[7] where we held that appellant's loud and abusive use of obscene and insulting language to a policewoman, thereby attracting a crowd of people, constituted "fighting words." Our conclusion is supported by *Cantwell v. Connecticut*,[8] in which the United States Supreme Court held: "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument."

Id.

The majority also cites *Tucker v. State*.[9] Like *Brooks*, however, *Tucker* supports Turner's conviction. In *Tucker* we held:

> There is sufficient evidence in the instant case to find Tucker guilty of disorderly conduct under OCGA § 16-11-39 (a) (3). While seated at a crowded bar, Tucker, in a loud and boisterous voice, thrust obscenities upon innocent bystanders. He called women in the bar "f---ing c--ts" in conjunction with stating that the women could not prevent him from saying what he wanted to say. He utilized the phrase "f--- you" several times, and became hostile and argumentative when Deputy Hodge asked him to calm down. Given these surrounding circumstances, Tucker's response to Grayborn that he could say whatever the "f---" he wanted to say could constitute "fighting words" in accordance with OCGA § 16-11-39 (a) (3). Tucker's abusive and opprobrious words not only tended to provoke violent resentment, but in fact provoked Grayborn such that he was preparing to physically

---

[6] *Brooks v. State*, 166 Ga. App. 704, 705 (305 SE2d 436) (1983).

[7] *Johnson v. State*, 143 Ga. App. 826 (240 SE2d 207) (1977).

[8] *Cantwell v. Connecticut*, 310 U. S. 296, 309-310 (60 SC 900, 84 LE 1213) (1940).

[9] *Tucker v. State*, 233 Ga. App. 314, 317 (2) (504 SE2d 250) (1998).

escort Tucker from the bar, and in Grayborn's words, "slap the taste out of his mouth."

Id.

As in both *Brooks* and *Tucker*, this case involves a defendant yelling a "fighting word" at a police officer who, in turn, reacts, approaches the defendant, and effects the defendant's arrest. Both cases clearly, therefore, support Turner's conviction.

The majority also relies on *Lundgren v. State*,[10] but that case is wholly distinguishable from the present matter. In *Lundgren*, the defendant, in an intoxicated state, rudely commented on the breasts of a female EMT who was assisting him. In reversing the defendant's conviction for disorderly conduct, we explained:

> The remarks at issue, although certainly rude, crude, and socially unacceptable, were not "sufficiently belligerent to incite an immediate breach of the peace." *City of Macon v. Smith*;[11] compare *Johnson v. State*, [supra]. While we do not condone these remarks, they cannot fairly be characterized as "fighting words" *in the circumstances and context in which they were said*. Therefore, Lundgren's conviction cannot stand.

(Emphasis supplied.) Id. at 427.

In this case, on the other hand, Turner screamed a fighting word at Officer Bruce in a nonconversational tone which the jury could have inferred was confrontational and aggressive given the context and circumstances of the incident. As such, the jury was authorized to convict Turner of disorderly conduct.

Finally, the majority includes dicta contained in *Cunningham v. State*[12] as support for its conclusion. *Cunningham*, however, involved the constitutional review of a Georgia statute prohibiting motorists from placing bumper stickers on their cars which contained profane or lewd words describing sexual acts, excretory functions, or parts of the human body. As such, *Cunningham* is distinguishable from the matter at hand.

We must affirm this conviction.

---

[10] *Lundgren v. State*, 238 Ga. App. 425 (518 SE2d 908) (1999).
[11] *City of Macon v. Smith*, 244 Ga. 157, 159 (259 SE2d 90) (1979).
[12] *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991).

DECIDED JULY 6, 2005 —
RECONSIDERATION DENIED JULY 28, 2005 —

*Billy L. Spruell*, for appellant.
*Jerry Rylee, Solicitor-General, Larry A. Baldwin II, Assistant Solicitor-General*, for appellee.