A09A0044. IN THE INTEREST OF L. E. N., a child.
(682 SE2d 156)

DOYLE, Judge.

L. E. N. was adjudicated delinquent in the Juvenile Court of Gilmer County based on a petition alleging disorderly conduct.[1] The delinquency petition also alleged that L. E. N. disrupted a public school in violation of OCGA § 20-2-1181; however, the Juvenile Court dismissed that count of the petition. On appeal, L. E. N. argues that the evidence was insufficient to support his delinquency adjudication.[2] We agree and reverse L. E. N.'s adjudication of delinquency.

1. L. E. N. argues that there was insufficient evidence to support his disorderly conduct conviction because his profane statement in the lunchroom at school did not constitute the type of language prohibited by OCGA § 16-11-39 — the statement did not constitute fighting words or "threaten[ ] an immediate breach of the peace."[3] We agree.

"On appeal from a delinquency adjudication, we view the evidence in a light most favorable to support the juvenile court's findings and judgment. Because it is the juvenile court's role to resolve conflicts in the evidence, we do not weigh the evidence, but merely evaluate its sufficiency."[4]

So viewed, the evidence presented at trial showed that on May 9, 2007, while in the lunchroom with approximately sixty other children under fourteen years old, L. E. N. was asked by two of his teachers to surrender a Sharpie brand permanent marker that he had in his possession; although possessing the marker did not violate any school policy, L. E. N.'s teachers had a team policy of confiscating the markers, which were apparently distracting to students. Eventually, L. E. N. gave the marker to teacher Les McDaniel.[5] L. E. N. then asked McDaniel if he could have it back at the end of the day.

---

[1] OCGA § 16-11-39.

[2] L. E. N. also argues that the trial court erred by refusing to allow L. E. N.'s mother to present factual testimony at the disposition hearing. However, based on our holding in Division 1 of this opinion, we need not reach this enumeration.

[3] OCGA § 16-11-39 (a) (3), (4).

[4] (Punctuation omitted.) *In the Interest of J. T.,* 297 Ga. App. 636 (678 SE2d 111) (2009).

[5] McDaniel testified that when asked to turn over the Sharpie, L. E. N. was "defiant, loud, and boisterous," and saying things like: "I wasn't doing anything with it. I wasn't marking on it." McDaniel acknowledged L. E. N. had not been marking on the lunch table, but he intended to take the Sharpie just in case.

McDaniel told L. E. N. he would discuss the situation with the other teachers and let him know at the end of the day if his marker would be returned. At that point, L. E. N. shouted "I better get my f---ing Sharpie back," and McDaniel escorted him without further incident to the principal's office. McDaniel testified that the conversation with L. E. N. attracted the attention of the other students in the cafeteria. McDaniel also described L. E. N.'s behavior as "hostile," and he explained that he was "very cautious in the way that [he] talked to [L. E. N.] . . ." because L. E. N. "was either angry or getting angry." However, the school resource officer testified that he reviewed a video-recording of the incident and "couldn't tell nothing about what happened," and he saw nothing unusual behavior-wise, just McDaniel talking to L. E. N.

"[T]he United States Supreme Court has limited abusive and obscene language prohibition to 'fighting words,' and defines them as 'words which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' "[6] This definition of fighting words has been incorporated into Georgia's disorderly conduct statute, which allows for conviction in one of four ways, two of which apply here. OCGA § 16-11-39 (a) (3) states that

> a person commits the offense of disorderly conduct when . . . (3) [w]ithout provocation, [the person] uses to or of another person in such other person's presence, opprobrious or abusive words *which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words*."

(Emphasis supplied.) OCGA § 16-11-39 (a) (4) states that the statute is violated if the person "uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years *which threatens an immediate breach of the peace*." "To ensure no abridgment of constitutional rights, the application of OCGA § 16-11-39's proscription on 'fighting words' must necessarily be narrow and limited."[7]

An appellate court reviewing a conviction, or in this case, a delinquency adjudication for "disorderly conduct arising from the

---

[6] *Bolden v. State*, 148 Ga. App. 315, 316 (2) (251 SE2d 165) (1978) (quoting *Chaplinsky v. New Hampshire*, 315 U. S. 568, 572 (2) (62 SC 766, 86 LE 1031) (1942)).

[7] *Lundgren v. State*, 238 Ga. App. 425, 426 (518 SE2d 908) (1999).

use of offensive language alone must examine not only the words used but also the circumstances and context in which they were said."[8]

The mere fact that L. E. N. used a curse word to emphasize his statement cannot sustain a finding that the evidence was sufficient to support the disorderly conduct charge under OCGA § 16-11-39 (a) (4) because "State law no longer criminalizes the use of unprovoked language threatening an immediate breach of peace, which is obscene, vulgar, or profane, that is directed to a person older than 14 years of age, unless such language also constitutes 'fighting words.' "[9] Thus, our analysis turns to whether the State proved that L. E. N.'s statement constituted fighting words — whether the statement "ha[d] a direct tendency to cause immediate acts of violence by the person to whom the speech or act [was] addressed."[10] We hold that the statement "I better get my f---ing Sharpie back," simply is not sufficiently threatening, belligerent, profane, or abusive enough to sustain a finding that an average hearer would be goaded into violence upon hearing the statement.[11]

For instance, in *Crolley v. State*, we reversed a disorderly conduct conviction because we determined that the defendant's profanity-laced castigation of an employee was not sufficient to constitute fighting words.[12] Upon finding his convertible vehicle open to the rain the defendant said to the employee, "___ it, the next time you let my car fill up with ___ water, you try to come and find my ___."[13] We explained that although the employee would justifiably resent the remarks, they did not subject the individual "to personal epithets or abuse" that may have provoked an individual to respond violently.[14]

---

[8] (Punctuation omitted.) *Turner v. State*, 274 Ga. App. 731, 732 (1) (a) (618 SE2d 607) (2005) (reversing a conviction for disorderly conduct under OCGA § 16-11-39 (a) (3) because the act of calling police officers "you bastards" as the defendant drove past without any further confrontation was not sufficient to threaten an immediate breach of the peace).

[9] *Lundgren*, 238 Ga. App. at 427.

[10] *Crolley v. State*, 182 Ga. App. 2, 4 (2) (354 SE2d 864) (1987) (addressing the previous statute, which also limited application to abusive or opprobrious language that also constituted fighting words).

[11] Compare with *McCarty v. State*, 269 Ga. App. 299, 302 (2) (603 SE2d 666) (2004) (evidence was sufficient to support conviction under OCGA § 16-11-39 (a) (3) when the defendant used profanity while yelling at a victim, calling her profane names); *Johnson v. State*, 255 Ga. App. 537 (566 SE2d 349) (2002) (upholding conviction under OCGA § 16-11-39 (a) (4) (without extended explanation) for yelling "f[---] the police" in the presence of police officers and children under the age of 14 and then physically resisting officers' attempt to arrest the defendant); *Shuler v. State*, 195 Ga. App. 849, 849-851 (395 SE2d 26) (1990) (affirming a conviction for disorderly conduct because the defendant teacher's statement to a student "to go beat off" was sufficient to constitute fighting words).

[12] See *Crolley*, 182 Ga. App. at 4 (2).

[13] The opinion does not contain the profanity used by the defendant. See *Crolley*, 182 Ga. App. at 4 (2).

[14] Id.

Moreover, the surrounding circumstances, including L. E. N.'s behavior and other statements does not transform the words into fighting words. In *Delaney v. State*,[15] we reversed a disorderly conduct conviction, holding that the defendant's actions of walking up to a stopped police cruiser and screaming to the police officer about being parked in the middle of the road while also throwing his hands around in the air did not constitute circumstances under which his statements could be characterized as fighting words.

Here, L. E. N. was rude and disrespectful, and he obviously was angry that his marker had been confiscated by his teacher; however, being rude, disrespectful, or angry in conjunction with the use of profanity or an angry statement is not sufficient to support L. E. N.'s conviction because nothing he said during the incident "threaten[ed] an immediate breach of the peace" or would have incited a listener to react violently to the language.[16] Moreover, there is no evidence that after making the statement L. E. N. was defiant, that he in any way resisted being escorted to the principal's office, or that he made any physically threatening gesture along with his statement.[17] In comparison to many of the cases in which we have found profanity to equate to fighting words, L. E. N. did not call McDaniel profane names or use profanity directed personally at him or at any of the other teachers.[18] The whole of L. E. N.'s statement, "I better get my f---ing Sharpie back," was not sufficiently threatening or so "opprobrious or abusive" to constitute "words . . . when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called 'fighting words.' "[19] Accordingly, although L. E. N.'s behavior was certainly

---

[15] 267 Ga. App. 377, 378-379 (599 SE2d 333) (2004).

[16] See *Turner*, 274 Ga. App. at 733 (1) (a); see also *Delaney*, 267 Ga. App. at 378-379.

[17] See *Sandidge v. State*, 279 Ga. App. 86, 87-89 (1) (630 SE2d 585) (2006) (reversing conviction under OCGA § 16-11-39 (a) (3) because the defendant's actions of waving her arms wildly at a police officer, arguing with him, telling him to arrest her, refusing to leave the store, and after being arrested, stating "Damn, I'm calling corporate office," was not sufficient to support the verdict); *Delaney*, 267 Ga. App. at 378-379. Compare with *Person v. State*, 206 Ga. App. 324, 325 (1) (425 SE2d 371) (1992) (explaining that the defendant accused the officer of acting in a racist manner in addition to cursing at the officer and screaming in his face "I'm not going to any g-d--n jail and I'm not wearing any mother-f-----g handcuffs").

[18] See OCGA § 16-11-39 (a) (4). See, e.g., *Tucker v. State*, 233 Ga. App. 314, 317 (2) (504 SE2d 250) (1998) (defendant loudly called women in the bar "f---ing c--ts" and used phrase "f--- you" several times); *Brooks v. State*, 166 Ga. App. 704, 705 (305 SE2d 436) (1983) (defendant gestured at police officer and yelled to a crowd of 150 to 200 people that "[t]his man here is a dog"); *Bolden*, 148 Ga. App. at 316 (4) (woman called officer "son of a b[-----]," "motherf[---]er," "bastard," "motherf[---]ing pig," and "pig").

[19] See OCGA § 16-11-39 (a) (3). See *Turner*, 274 Ga. App. at 733 (1) (a); see also *Delaney*, 267 Ga. App. at 378-379. Compare with *Evans v. State*, 241 Ga. App. 32, 33-34 (3) (525 SE2d 780) (1999) (physical precedent only) (defendant made several profanity-laced remarks to a police officer before threatening to get his gun from his car and shoot the officer); *Anderson v. State*, 231 Ga. App. 807, 809 (1) (499 SE2d 717) (1998) (defendant called sheriff a "no-good son

disrespectful toward his teacher, examining the words used under the circumstances and in the context in which they were said, the evidence does not support a finding of disorderly conduct as alleged in the delinquency petition.

2. The appellee's motion to dismiss the appeal as moot is denied.

*Judgment reversed. Adams, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JULY 15, 2009.

*Ralph F. Forsythe, Nathanael A. Horsley*, for appellant.

*Joe W. Hendricks, Jr., District Attorney, Michael P. Baird, Assistant District Attorney*, for appellee.

---

of a b[----]" and threatened to kick his "ass"), abrogated on other grounds by *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (547 SE2d 637) (2001).