[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12562
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00493-MTT


LAWRENCE R. MERENDA,

Plaintiff - Appellee,

versus

JUSTIN J. TABOR,
Trooper for the Georgia State Patrol, in his individual capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 1, 2013)

Before TJOFLAT, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

This case arises from the arrest of Lawrence Merenda.  Merenda brought an

action under 42 U.S.C. § 1983 alleging that the arresting officer, Justin Tabor,

violated his First, Fourth, and Eighth Amendment rights in making the arrest.

Tabor moved for summary judgment on the basis of qualified immunity. After

hearing oral argument, the district court granted Tabor qualified immunity as to the

Eighth Amendment claim[1] and denied qualified immunity as to the First and

Fourth Amendment claims. This is Tabor's appeal of the order partially denying

his summary judgment motion.[2]

I.

On December 24, 2008, Tabor pulled over Merenda's daughter in the

parking lot of the nursing home in Perry, Georgia where Merenda worked and

wrote her a ticket for wearing her seatbelt improperly. Merenda came outside and

attempted to convince Tabor not to write the ticket. The video recorder from

Tabor's squad car recorded most of the exchange between Merenda and Tabor.

Merenda observed that wearing a seatbelt under one arm was a minor infraction,

but Tabor persisted. Merenda then said, "this sucks," and, as he was turning to

walk away from Tabor, said, "You're a fucking asshole." The verbal exchange

between Merenda and Tabor was picked up on the patrol car's recorder, but

Merenda's epithet is barely audible, either because he was turned away from the

microphones as he said it, because he spoke softly, or both.

---

[1] Merenda has not appealed the grant of summary judgment on the Eighth Amendment claim.

[2] We have jurisdiction to review this interlocutory order. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817 (1985).

As Merenda walked quickly away from Tabor, Tabor attempted to stop him, twice telling him "come here." When Merenda did not stop, Tabor left his patrol car to catch up with him. Tabor said, "sir," and Merenda turned around.[3] Tabor instructed Merenda to put his hands behind his back. Merenda repeatedly asked why. As Tabor pulled Merenda's hands behind his back, Merenda held his arms stiffly, which Tabor considered threatening. Tabor put Merenda in a choke hold and bent him over the trunk of the car. He handcuffed Merenda and put him in the back of his patrol car.

According to Tabor, there were witnesses in the parking lot "but not in the direct vicinity of [his] patrol vehicle" and Merenda's daughter was still in her car. A few of Merenda's co-workers witnessed the arrest. One co-worker testified that he and two others arrived outside at the time when Tabor was trying to handcuff Merenda. Merenda testified at his deposition that there were no people outside at the time when he called Tabor a "fucking asshole."

While Merenda sat in the back of the police car, Tabor told him, "Your mouth done got you in trouble" and, "Larry, you can't talk to people like that. Especially not the police, and get away with it."

Merenda was taken to the county jail and charged with felony obstruction. After watching the tape of the incident, the Georgia State Patrol concluded that

_____

[3] Tabor claims that, as he turned around, Merenda pointed his finger and said "fuck you." Merenda, however, denies saying "fuck you" and says he "might have" pointed at Tabor.

Tabor "had no legal cause to charge Mr. Merenda with Obstruction or Hindering a law enforcement officer" and arranged for the charge to be dropped. The Assistant Solicitor agreed to nolle prosse the charge against Merenda.

## II.

We review <u>de novo</u> a denial of summary judgment based on qualified immunity. <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1395 (11th Cir. 1994). We apply the same legal standards as the district court and "resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." <u>Edwards v. Shanley</u>, 666 F.3d 1289, 1292 (11th Cir. 2012).

Qualified immunity provides "complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sherrod v. Johnson</u>, 667 F.3d 1359, 1363 (11th Cir. 2012) (quotation marks omitted). It is clear that Tabor was performing a discretionary function when he arrested Merenda, so the burden shifts to Merenda to show that qualified immunity is not appropriate. <u>See</u> <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding that "there can be no doubt" that a police officer was acting in his discretionary capacity when he arrested the plaintiff). To show that an officer is not entitled to qualified immunity, a plaintiff must establish

(1) that the officer's conduct "amounted to a constitutional violation" and (2) that "the right violated was 'clearly established' at the time of the violation." Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009).

### III.

Merenda alleges that Tabor arrested him without probable cause, in violation of his Fourth Amendment rights. An arrest made without probable cause violates the Fourth Amendment. See Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). Probable cause to arrest exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. (quotation marks omitted). We have clarified that officers are entitled to qualified immunity for a warrantless arrest if they had arguable probable cause, which exists if "reasonable officers in the same circumstances and possession the same knowledge as the Defendant could have believed that probable cause existed to arrest." Id. (quotation marks and alteration omitted).

Tabor argues that he had arguable probable cause to arrest Merenda for the offenses of disorderly conduct and obstruction of an officer. Although Tabor originally charged Merenda with only obstruction of an officer, the "validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Bailey v. Bd. of Cnty Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4

5

(11th Cir. 1992). So long as an officer has "arguable probable cause to arrest for any offense, qualified immunity will apply." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010).

An individual engages in disorderly conduct when he "[w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace . . . that is, words commonly called 'fighting words.'" Ga. Code Ann. § 16-11-39(a)(3) (2012). States cannot apply criminal penalties to protected speech, and Georgia has accordingly tailored its disorderly conduct statute to punish only unprotected fighting words. See e.g., Gooding v. Wilson, 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1106 (1972) (holding a Georgia statute that criminalized using "opprobrious words or abusive language tending to cause a breach of peace" unconstitutional because First Amendment protections "forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.'"). In defining fighting words in the context of disorderly conduct and resisting arrest, Georgia courts recognize that a court "must examine not only the words used but also the circumstances and context in which they were said." Turner v. State, 618 S.E.2d 607, 608 (Ga. Ct. App. 2005) (quotation marks omitted).

Tabor cites several decisions issued by the Georgia Court of Appeals upholding convictions under an earlier version of the disorderly conduct statute, which criminalized the use of "fighting words."  In citing those decisions, Tabor focuses only on the words uttered.  He fails to note that in many of those cases, the offending words were used in heated face-to-face confrontations where the speaker showered police officers with abuse.  Bolden v. State, 251 S.E.2d 165, 167 (Ga. Ct. App. 1978) (defendant called the arresting officer a "son of a bitch," "mother fucker," "pig," "motherfucking pig" and a "bastard."); Evans v. State, 373 S.E.2d 52, 53–54 (Ga. Ct. App. 1988) (defendant called the officer a "goddamned liar" and told the officers at the scene to "fuck off."); Person v. State, 425 S.E.2d 371, 325 (Ga. Ct. App. 1992) (defendant "continually kept getting up in [the officer's] face and cussing him," including saying he was "not going to any goddamn jail" and "not wearing any mother-fucking handcuffs.") (alterations omitted); see also Anderson v. State, 499 S.E.2d 717, 720 (Ga. Ct. App. 1998) (upholding a conviction under the current disorderly conduct statute when an individual called an officer a "no-good son of a bitch" and threatened to "kick [his] ass.").  The other cases upholding convictions dealt with situations where there were bystanders present who could be provoked.  Davenport v. State, 361 S.E.2d 219, 219 (Ga. Ct. App. 1987) ("[I]t . . . is clear that by [the defendant's] language and actions to [the guard] she invoked violence against herself and provoked passions

7

in bystanders."); Brooks v. State, 305 S.E.2d 436, 437 (Ga. Ct. App. 1983) ("[W]e find that pointing to Officer Glasgow and yelling to a large crowd of 150 to 200 people that '[t]his man here is a dog' is the type of language commonly called 'fighting words' . . .").

More recent Georgia decisions, interpreting the current disorderly conduct statute, have made it clear that an arrest for disorderly conduct based on speech requires a face-to-face confrontation or the presence of a crowd. See Turner v. State, 618 S.E.2d 607, 608 (Ga. Ct. App. 2005) (explaining that Bolden, Evans, Person, Anderson, and Brooks involved "a face-to-face confrontation with the officer, and . . . opprobrious words [that] amounted to far more than a one-word insult."). Merely insulting an officer is not enough. See id. (reversing a disorderly conduct conviction where the defendant shouted "you bastards" at officers while driving by because the defendant "was not engaged in a face-to-face confrontation with the officer tending to incite an immediate breach of the peace when the words were spoken"); see also Lundgren v. State, 518 S.E.2d 908, 908–09 (Ga. Ct. App. 1999) (reversing a disorderly conduct conviction when, although the speaker's words were offensive, there was "[n]o yelling, no spectacle, [and] no confrontation"). A face-to-face confrontation is not required if the speaker is attempting to incite a crowd. See Johnson v. State, 566 S.E.2d 349, 350 (Ga. Ct.

8

App. 2002) (upholding conviction for disorderly conduct when the defendant repeatedly yelled "fuck the police" in a crowd).

In this case, the impetus for Merenda's arrest was his comment that Tabor was a "fucking asshole."  At his deposition, Tabor testified that he arrested Merenda "because he used profanity not just only in my presence but everyone else's presence" and because Merenda "was extremely agitated, angry, upset, didn't know where he was going, didn't know his intentions."  The fact that Merenda's epithet is barely audible on the patrol car recording when the rest of the conversation was clearly recorded indicates that Merenda's words were said as he was turning away from Tabor or were said quietly or both.  The video shows that Tabor was not shouting and did not appear to be a danger to anyone as he walked away.  Also, although Tabor says that there were numerous witnesses in the parking lot, the evidence viewed in the light most favorable to Merenda establishes that only four people witnessed Merenda's arrest—three of Merenda's co-workers and his daughter.  The three co-workers arrived at the time when Merenda was being handcuffed, so they did not have the opportunity to overhear his words, and Merenda's daughter testified that she did not hear them.  It would not be reasonable for Tabor to believe that Merenda's comment was overheard when the comment is barely audible on the tape and the evidence viewed in the light most favorable to Merenda establishes that there were no other people close enough to

9

hear it.  Accordingly, Tabor did not have even arguable probable cause to arrest Merenda for disorderly conduct.

Tabor argues that he also had probable cause, or at least arguable probable cause, to arrest Merenda for obstructing an officer.  An individual commits misdemeanor obstruction when he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties."  Ga. Code Ann. § 16-10-24(a).  Tabor contends that Merenda obstructed him by resisting arrest, and the evidence does indicate that Merenda held his arms stiffly when Tabor attempted to put them behind his back.  However, this contention adds nothing to Tabor's defense because it is dependent upon the validity, or arguable validity, of the arrest.  Under Georgia law, Merenda was entitled to resist arrest if the arrest was unlawful.  Mullis v. State, 27 S.E.2d 91, 98 (Ga. 1943) ("Where an arrest is not lawful, the person sought to be so arrested, contrary to his right if the arrest had been lawful, has the right to resist, and in doing so has a right to resist force with force proportionate to that being used in unlawfully detaining him.") (quotation marks omitted); see also Traylor v. State, 193 S.E.2d 876, 878 (Ga. Ct. App. 1972) ("The defendant had the right to leave, and to ignore or defy the arrest, if said arrest was illegal.").  Merenda also did not commit any crime when he

10

walked away from Tabor.[4] Strickland v. State, 594 S.E.2d 711, 715 (Ga. App. Ct. 2004) ("[D]uring the course of [a detention without a particularized and objective basis for suspecting criminal activity], a citizen is free to ignore requests and/or to walk away, and . . . no charge of obstruction [will] lie . . . ."). Because Tabor did not have probable cause to arrest Merenda, Merenda was within his rights to hold his arms stiffly, even if that arm position could be reasonably understood as resisting arrest.

There is also no evidence in the record that Merenda in any way obstructed Tabor from writing the traffic citation for his daughter. Inquiring into what an officer is doing does not constitute obstruction. See Skop, 485 F.3d at 1139.

IV.

Because Tabor did not have arguable probable cause to arrest Merenda, we must consider whether Tabor's actions violated Merenda's First Amendment rights and whether those rights are clearly established.[5] To establish a First Amendment claim, a plaintiff must show "first, that his speech or act was constitutionally

---

[4] Tabor asserts that Merenda cursed at him a second time, but Merenda disputes that and no comment was detected on the recording. Because we are viewing the facts in the light most favorable to Merenda, we do not consider whether the alleged second curse constituted disorderly conduct.

[5] If Tabor had arguable probable cause to arrest Merenda, he would be entitled to qualified immunity on both the Fourth Amendment and First Amendment claims. See Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

11

protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). Tabor's speech did not amount to fighting words, so that speech was protected. There is a clear causal connection between that protected speech and the arrest because Tabor testified that he arrested Merenda "because he used profanity not just only in my presence but everyone else's presence." It is clearly established that it is a violation of the First Amendment to arrest an individual based on his protected speech. Gooding v. Wilson, 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1106 (1972) ("The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.'"); Bennett, 423 F.3d at 1255 (holding that it is clearly established "that retaliation against private citizens for exercising their First Amendment rights is actionable.") (quotation marks omitted). Therefore, the district court's finding that Tabor is not entitled to qualified immunity on the First Amendment and the Fourth Amendment claims is due to be affirmed.

V.

In addition to contending that the district court erred by not granting his summary judgment motion on Merenda's First and Fourth Amendment claims,

12

Tabor also challenges what he characterizes as the district court's grant of summary judgment in favor of Merenda on those claims. Although both parties seem to believe that the district court granted summary judgment in favor of Merenda on his First and Fourth Amendment claims, the record does not clearly establish that the court did so. [6] The parties' conclusion that summary judgment was granted for Merenda is based on the district court's order that a trial "on the issue of damages" is to be held. The district court did not, however, specifically find that Tabor was liable on those claims. It did not explicitly grant summary judgment in favor of Merenda in its order denying summary judgment to Tabor, nor did it enter a separate order granting summary judgment. See Fed. R. Civ. P. 58 (providing that "[e]very judgment and amended judgment must be set out in a separate document" with the exception of certain enumerated orders not at issue here).

Even if the court's statement that there will be a trial on damages could be considered a ruling that Tabor was liable, that order is not a final judgment because

---

[6] Merenda did not move for summary judgment, and the court did not give Tabor notice that it was considering granting summary judgment in favor of Merenda. If the district court considers granting summary judgment for Merenda on remand, it should give Tabor notice and an opportunity to respond. See Fed. R. Civ. P. 56(f); Burton v. City of Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999) ("[S]o long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment sua sponte is entirely appropriate."). In determining whether to grant summary judgment in favor of Merenda, the district court would need to conduct an analysis of the evidence viewed in the light most favorable to Tabor. See Burton, 178 F.3d at 1187.

13

the issue of damages is yet to be determined.  Therefore, we would still have no

jurisdiction to review it at this time.  See  Cook v. Carolina Freight Carriers Corp.,

867 F.2d 1266, 1267 (11th Cir. 1989) ("Generally, an order of the district court

determining the issue of liability, but leaving damages to be determined, is not a

final, appealable order.").[7]  This part of the appeal is due to be dismissed.

## VI.

The district court's denial of summary judgment to Tabor on Merenda's

First and Fourth Amendment claims on the basis of qualified immunity is

**AFFIRMED**.  To the extent that Tabor attempts to appeal what he construes to be

a grant of summary judgment in favor of Merenda on his First and Fourth

Amendment claims, that part of this appeal is **DISMISSED** for lack of jurisdiction

because no final judgment in favor of Merenda was entered on those claims.

---

[7] There are limited exceptions to the rule that only final judgments are appealable, but none applies here.  The district court did not attempt to certify this or any part of the case for interlocutory appeal under 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b).