**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 21, 2017**

# In the Court of Appeals of Georgia

A16A1607. KNOWLES v. THE STATE.

DILLARD, Presiding Judge.

In this interlocutory appeal, Elrico Knowles challenges the trial court's denial of his motion to suppress drug evidence that was discovered on his person during a warrantless search incident to his arrest for disorderly conduct. On appeal, Knowles argues that the trial court erred in finding that the arresting officer had probable cause to arrest him. For the reasons set forth *infra*, we agree, and thus, reverse the trial court's ruling.

The facts relevant to this appeal are undisputed.[1] On September 20, 2014, a police officer, while on patrol in Laurens County, Georgia, observed a vehicle with no tag light. And because the officer could not see the car's tag without the light, he initiated a traffic stop. Once the car was stopped, the driver exited the vehicle, and although he was instructed to stay inside the car, he continued to walk toward the officer. As the driver approached, the officer smelled the odor of an alcoholic beverage and observed him talking with slurred speech. Shortly thereafter, two

---

[1] The trial court held a hearing on Knowles's motion to suppress on November 19, 2015, and issued its order denying the motion the following day. For reasons unknown to this Court, the hearing was either not transcribed or the transcript is otherwise unavailable. Nevertheless, in April 2016, the parties agreed to a statement of stipulated facts, which the trial court approved. Thus, notwithstanding the absence of a transcript, we rely on the agreed-upon statement of facts to resolve this appeal. *See* OCGA § 5-6-41 (i) ("In lieu of sending up a transcript of record, the parties may by agreement file a stipulation of the case showing how the questions arose and were decided in the trial court, together with a sufficient statement of facts to enable the appellate court to pass upon the questions presented therein. Before being transmitted to the appellate court, the stipulation shall be approved by the trial judge or the presiding judge of the court where the case is pending."); *see also Holmes v. Roberson-Holmes*, 287 Ga. 358, 360-61 (1) (695 SE2d 586) (2010) (noting that "[e]ven where the parties actually agree on the facts and execute a 'stipulation of the case' with a sufficient statement of facts to enable an appellate court to pass upon the questions presented, that stipulation must have attached the approval of the trial judge, OCGA § 5-6-41 (i), before an appellate court would be authorized to use that stipulation 'to consider the enumerations of error as having been raised in the trial court in accordance with the statements contained therein.") (citation omitted).

additional officers arrived on the scene and conducted field-sobriety tests on the driver.

Meanwhile, the officer who initiated the stop noticed movement in the car and went to ask its occupants for their identification. In doing so, the officer observed Knowles, who was in the backseat, "fidgeting and put[ting] his hand in and out of his pockets and looking in a bag." Based on Knowles's behavior of "fidgeting and looking around," the officer thought that he was acting nervous and suspicious, and therefore, requested that he exit the vehicle to be frisked for weapons. Once Knowles exited the car, he began "yelling and cursing," and in an apparent attempt to explain his fidgety behavior, he told the officer "I'm just trying to give you my damn ID." But despite Knowles's statements and rude behavior, the officer did not feel threatened, and ultimately, he determined that Knowles was unarmed. The officer then ran a check on Knowles's identification and discovered that he had no outstanding warrants or warnings. When the officer returned to give Knowles back his identification, Knowles said "fuck you," and at that point, the officer arrested him for disorderly conduct. Later, during a search of Knowles incident to his arrest, the officer found a crack pipe and a substance that he suspected to be cocaine.

Ultimately, a grand jury charged Knowles with possession of cocaine and disorderly conduct. Knowles subsequently filed a motion to suppress the drug evidence discovered during the search incident to his arrest, arguing, *inter alia*, that the arresting officer lacked probable cause to arrest him for disorderly conduct. Following a hearing on the matter, the trial court denied Knowles's motion to suppress evidence, but granted him a certificate of immediate review. This Court then granted Knowles's application for an interlocutory appeal, and this appeal follows.

In his sole enumeration of error, Knowles argues that the trial court erred in denying his motion to suppress evidence because the arresting officer lacked probable cause to arrest him for disorderly conduct. We agree.

In reviewing the denial of a motion to suppress, an appellate court generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[2] However, we review *de novo* the trial court's

_____

[2] *Armentrout v. State*, 332 Ga. App. 370, 371-72 (772 SE2d 817) (2015) (footnotes omitted).

4

"application of law to the undisputed facts."[3] Bearing these guiding principles in mind, we turn now to Knowles's specific claim of error.

On appeal, Knowles contends that the trial court erroneously found that the arresting officer had probable cause to arrest him for disorderly conduct because his use of profanity during the traffic stop, without more, is insufficient to support an arrest for that offense. A warrantless arrest, like the one at issue here, "is constitutionally valid if the arresting officer has probable cause to believe the accused has committed or is committing an offense."[4] And probable cause exists if the arresting officer has "reasonably trustworthy information that would allow a reasonable person to believe the accused committed a crime."[5]

Relevant to the arrest in this case, OCGA § 16-11-39 (a) (3) provides that

[a] person commits the offense of disorderly conduct when such person . . . [w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary

---

[3] *Id.* at 372 (punctuation omitted).

[4] *Brown v. State*, 278 Ga. 724, 727 (2) (609 SE2d 312) (2004) (punctuation omitted); *accord Dodds v. State*, 288 Ga. App. 231, 233 (653 SE2d 828) (2007).

[5] *Brown*, 278 Ga. at 727 (2); *accord Dodds*, 288 Ga. App. at 233.

5

circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called 'fighting words' . . . .[6]

And "fighting words" are defined as "those words by which their very utterance tend to incite an immediate breach of the peace."[7] Indeed, as the Supreme Court of Georgia

---

[6] Under subsections (1), (2), and (4) of OCGA § 16-11-39 (a), the offense of disorderly conduct is also committed when a person "[a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health"; "[a]cts in a violent or tumultuous manner toward another person whereby the property of such person is placed in danger of being damaged or destroyed"; or "[w]ithout provocation, uses obscene and vulgar or profane language in the presence of or by telephone to a person under the age of 14 years which threatens an immediate breach of the peace." Here, there is no evidence (and the indictment did not charge) that Knowles acted in a violent or tumultuous manner or that he used vulgar or profane language in the presence of a person under the age of 14. Thus, the only criminal offense that potentially applies to Knowles is delineated in OCGA § 16-11-39 (a) (3). Indeed, the indictment charged Knowles with committing the offense of disorderly conduct by using "opprobrious and abusive words," which are allegations that track the language in (a) (3).

[7] *Cunningham v. State*, 260 Ga. 827, 828 (400 SE2d 916) (1991) (punctuation omitted), *quoting Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (62 SCt 766, 86 LEd 1031 (1942); *accord Walt Disney Prods., Inc. v. Shannon*, 247 Ga. 402, 403 (276 SE2d 580) (1981);*Tucker v. State*, 233 Ga. App. 314, 316 (2) (504 SE2d 250) (1998); *see Delaney v. State*, 267 Ga. App. 377, 377-78 (599 SE2d 333) (2004) (noting that, to be considered fighting words under OCGA § 16-11-39, the words must be such that their mere utterance tends to incite an immediate breach of the peace); *see generally* Dawn Christine Egan, *"Fighting Words' Doctrine: Are Police Officers Held to A Higher Standard, or Per Bailey v. State, Do We Expect No More from Our Law Enforcement Officers Than We Do from the Average Arkansan?*, 52 Ark. L. Rev. 591, 595-99 (III) (1999) (discussing the historical development of

has explained, "profane, libelous, lewd, obscene, and fighting words . . . have in common the characteristics of injuring or offending a particular audience and tending to provoke a retaliatory response . . ."[8] Moreover, the use of "fighting words" does not "constitute *protected* speech under the First and Fourteenth Amendments to the United States Constitution or under Art. I, Sec. I, Par. V of the Georgia Constitution."[9] To the contrary, fighting words constitute "one of those narrow speech

---

federal law regarding fighting words, beginning with *Chaplinsky).*

[8] *Cunningham*, 260 Ga. at 828 (punctuation omitted), *citing Chaplinsky*, 315 U.S. at 572; *accord Virginia v. Black*, 538 U.S. 343, 359 (III) (A) (123 SCt 1536, 155 LEd 2d 535 (2003); *Shannon*, 247 Ga. at 403; *see Tucker*, 233 Ga. App. at 316 (2) ("Fighting words include statements that injure or offend a particular audience and tend to provoke a retaliatory response."); *See generally,* Annotation*, Laws Prohibiting Profanity*, 5 A.L.R.4th 956, § 3.

[9] *Tucker*, 233 Ga. App. at 316 (2) (punctuation omitted); *accord State v. Klinakis*, 206 Ga. App. 318, 319 (1) (b) (425 SE2d 665) (1992); *see N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (III) (102 SCt 3409, 73 LEd 2d 1215) (1982) ("It is clear that 'fighting words'—those that provoke immediate violence—are not protected by the First Amendment."); *West v. State*, 300 Ga. 39, 61 (793 SE2d 57) (2016) (noting that a statement that constitutes an "unbraid, insult, or abuse" that can be classified as fighting words is not subject to First Amendment protections); *Cunningham*, 260 Ga. at 828 (explaining that fighting words are one of the categories of speech that does not "raise constitutional problems provided that the statutes regulating them are narrowly drawn.").

areas not constitutionally protected."[10] Nevertheless, to ensure no abridgment of constitutional rights, "the application of OCGA § 16-11-39 (a) (3)'s proscription on 'fighting words' must necessarily be narrow and limited."[11] Importantly, when determining whether words constitute fighting words, "the circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had 'a direct tendency to cause acts of

---

[10] *Tucker*, 233 Ga. App. at 316 (2) (punctuation omitted); *accord Klinakis*, 206 Ga. App. at 319 (1) (b); *see Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 791 (II) (131 SCt 2729, 180 LEd2d 708) (2011) (noting that fighting words represents one of the "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem" (punctuation omitted)); *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc*., 266 Ga. 393, 402 (5) (467 SE2d 875) (1996) (holding that, although the regulation of profane language in the context of "fighting words" is constitutional, the statute at issue was unconstitutional because it was not "narrowly tailored to protect some vital government interest"); *supra* Note 9 and accompanying text.

[11] *Delaney*, 267 Ga. App. at 378 (punctuation omitted); *accord Lundgren v. State*, 238 Ga. App. 425, 426 (518 SE2d 908) (1999); *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (III) (A) (103 SCt 948, 74 LEd 2d 794) (1983) (noting that for a state to enforce a content-based regulation of speech, "it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end"); *Cunningham*, 260 Ga. at 831(explaining that if a statute, such as one criminalizing the use of fighting words, "affects protected speech," Georgia courts, in reviewing whether the statute is constitutional, must first determine if it is narrowly tailored to protect some vital government interest).

violence' by others."[12] Indeed, "[c]onstitutional enforcement of even facially valid laws applied to fighting words now appears to depend as much on the factual circumstances surrounding a word's utterance as on the character of the word uttered."[13]

---

[12] *Tucker*, 233 Ga. App. at 317 (2) (punctuation omitted); *see Chaplinsky*, 315 U.S. at 574 n.8 (upholding a fighting words statute that prohibited speech that had "the direct tendency . . .to provoke the person against whom it was directed to acts of violence"); *Hess v. Indiana*, 414 U.S. 105, 109 (94 SCt 326, 38 L Ed.2d 303) (1973) (describing fighting words as those that have a "tendency to lead to violence"); *City of Macon v. Smith*, 244 Ga. 157, 158 (259 SE2d 90) (1979) (construing a city ordinance prohibiting the use of fighting words as one that is applicable to "words, expressions, or acts that have direct tendency to cause immediate acts of violence by the person to whom the speech or act is addressed").

[13] *Tucker*, 233 Ga. App. at 317 (2) (punctuation omitted), *quoting Lamar v. Banks*, 684 F2d 714, 719 (3) (11th Cir.1982); *see Lewis v. City of New Orleans*, 415 U.S. 130, 135 (94 SCt 970, 39 LEd 2d 214) (1974) ("Quite apart from the ambiguity inherent in the term 'oppobrious,' words may or may not be 'fighting words,' depending upon the circumstances of their utterance." (Powell, J., concurring), *approved of in City of Houston, Tex. v. Hill*, 482 U.S. 451, 462 (II) (107 SCt 2502, 96 LE2d 398 (1987)); *Posr v. Court Officer Shield No. 207*, 180 F3d 409, 416 (II) (C) (1) (2d Cir. 1999) (stating that the meaning of the words alleged to be fighting words "is dependent upon context, tone, accompanying action, and a variety of other circumstances"); *Smith*, 244 Ga. at 158 (holding that, although the conduct at issue was vulgar and offensive, it could not fairly be characterized as "fighting words" *under the circumstances* and noting that the record did not indicate that the conduct was "sufficiently belligerent" to incite an immediate breach of the peace); *Turner v. State*, 274 Ga. App. 731, 732 (1) (a) (618 SE2d 607) (2005) ("[A]n appellate court faced with a conviction for disorderly conduct arising from the use of offensive language alone must examine not only the words used but also the circumstances and context in which they were said." (punctuation omitted)); *Lundgren*, 238 Ga. App. at

9

Lastly, although the State argues that "there should not be a different standard when opprobrious and abusive language is directed toward a police officer,"[14] the

427 (holding that although the remarks at issue were "rude, crude, and socially unacceptable," they could not be "fairly be characterized as 'fighting words' *in the circumstances and context in which they were said*" (emphasis supplied)); *see also Johnson v. Campbell*, 332 F3d 199, 212 (II) (B) (3d Cir. 2003) ("On the specific subject of 'profane words, the Supreme Court [of the United States] has held that even those words alone, unaccompanied by any evidence of violent arousal, are not 'fighting words,' and are therefore protected speech."), *citing Cohen v. California*, 403 U.S. 15 (91 SCt 1780, 29 LE2d 284) (1971). *But see Sandidge v. State*, 279 Ga. App. 86, 88 (1) (630 SE2d 585) (2006) ("While the circumstances surrounding the words can be crucial, circumstances cannot change harmless words into 'fighting words.'" (punctuation and citation omitted)).

[14] To support its apparent argument that, in determining whether words rise to the level of fighting words, this Court should not take into consideration that the words were directed to a police officer, the State relies on *Bolden v. State*, 148 Ga. App. 315 (251 SE2d 165) (1978). However, *Bolden* merely held that "[t]he fact that a policeman admits that he is used to hearing obscene language during the performance of his duties is *not a defense available to the defendant* under [the fighting-words statute]." *See id*. at 316 (2) (emphasis supplied). Moreover, in *Bolden*, this Court also acknowledged that, in determining whether certain statements amount to fighting words, the circumstances in which the statements are made must be considered. *See id.* We have reaffirmed *Bolden*'s holding regarding words spoken to police officers in the course of their duties in subsequent fighting-words cases. *See Anderson v. State*, 231 Ga. App. 807, 809 (1) (499 SE2d 717) (1998), *abrogated on other grounds by Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (547 SE2d 637) (2001); *Evans v. State*, 188 Ga. App. 347, 347 (1) (373 SE2d 52) (1988); *Brooks v. State*, 166 Ga. App. 704, 705 (305 SE2d 436) (1983). But to the extent that our decisions in these cases can possibly be read as standing for the broad proposition that, in determining whether offensive words amount to fighting words, this Court should disregard that the words were directed toward a law-enforcement officer, we reject such a reading as having no precedential utility because it would be in direct

10

Supreme Court of the United States and other federal courts have indicated that the fighting-words exception to constitutionally protected speech "require[s] a narrower application in cases involving words addressed to a police officer[.]"[15] This is because

conflict with decisions of the Supreme Court of the United States, set forth *infra*, regarding matters of federal constitutional law. Suffice it to say, when "questions arising under the [f]ederal constitution are properly invoked," Georgia's appellate courts are "bound to follow the decisions of the Supreme Court of the United States as respects such questions." *See Mason & Dixon Lines v. Odom*, 193 Ga. 471, 471 (2) (18 SE2d 841) (1942); *Marchman v. Marchman*, 198 Ga. 739, 742 (32 SE2d 790) (1945) ("Since the question here involves the constitution and laws of the United States, this court must accept the interpretation placed thereupon by the Supreme Court of the United States."); *Georgia R.R. v. Cubbedge, Hazelhurst & Co.*, 75 Ga. 321, 322 (1885) (holding that, regardless of the Supreme Court of Georgia's prior rulings on a question of federal bankruptcy law, the Court was "bound by the decisions of the Supreme Court of the United States on th[e] subject"); *see also* Ga. Const., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith*, 308 Ga. App. 345, 352 (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.").

[15] *Hill*, 482 U.S. at 462 (II); *accord Johnson*, 332 F3d at 212 (II) (B); *United States v. Poocha*, 259 F3d 1077, 1081 (9th Cir. 2001); *Provost v. City of Newburgh*, 262 F3d 146, 159 (3) (2d Cir. 2001); *Posr*, 180 F3d at 415 (II) (C) (1) ("[T]he 'fighting words' doctrine is probably "narrower [in] application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." (punctuation omitted)); *Gold v. City of Miami*, 138 F3d 886, 889 (11th Cir. 1998) ("[A] police officer, by virtue of his profession or training, is expected to absorb a certain amount of [verbal] abuse without retaliating"); *Buffkins v. City of Omaha, Douglas Cty., Neb.*, 922 F2d 465, 472 (III) (B) (8th Cir. 1990) (noting that the Supreme Court of the United States, in *Hill*, recognized that "the 'fighting words' doctrine may be limited in the case of communications addressed to properly trained

a "properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"[16] Additionally, as the Supreme Court has further explained, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[17] Indeed, the freedom of individuals verbally to "oppose

police officers because police officers are expected to exercise greater restraint in their response than the average citizen").

[16] *Hill*, 482 U.S. at 462 (II) (punctuation omitted); *accord Lewis*, 415 U.S. at 135 (Powell, J. concurring, *approved of in Hill*); *Johnson*, 332 F3d at 212 (II) (B); *Poocha*, 259 F3d at 1081; *see Payne v. Pauley*, 337 F3d 767, 776 (II) (7th Cir.2003) (noting that "the First Amendment protects *even profanity-laden speech* directed at police officers" and that "[p]olice officers reasonably may be expected to exercise a higher degree of restraint than the average citizen" (emphasis supplied)). *Cf. Lamar*, 684 F2d at 718 (2) n.13 ("This is not a case where the words were addressed to a person who by virtue of his profession or training could be expected to absorb a certain amount of abuse without retaliating physically, for example, a policeman. The situation may be different where words are addressed to a police officer trained to exercise a higher degree of restraint than the average citizen." (punctuation omitted)).

[17] *Hill*, 482 U.S. at 461 (II); *accord Lewis*, 415 U.S. at 135 (Powell, J. concurring, *approved of in Hill*); *Stearns v. Clarkson*, 615 F3d 1278, 1283 (II) (B) (1) (10th Cir. 2010); *Mesa v. Prejean*, 543 F3d 264, 273 (II) (3) (B) (5th Cir. 2008); *Greene v. Barber*, 310 F3d 889, 896 (2) (6th Cir. 2002); *Gold*, 138 F3d at 888; *Buffkins,* 922 F2d at 472 (III) (B).

or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[18]

Turning to the case *sub judice*, the only evidence cited by the trial court or set forth in the stipulated facts to show that the arresting officer had reason to believe that Knowles had engaged in disorderly conduct was that he yelled, cursed, referenced his "damn ID," and said "fuck you" once to the officer. And while the trial court also noted that Knowles acted "aggressive[ly] toward the officer," it did not cite any evidence regarding how Knowles did so other than by making the foregoing (and unsubstantiated) statement. Furthermore, the stipulated facts, which the trial court approved, gave no indication that Knowles exhibited any non-verbal aggressive behavior; and although the officer's subjective feelings are not directly relevant to our analysis,[19] the fact that the officer did not feel threatened by Knowles strongly

---

[18] *Hill*, 482 U.S. at 462-63 (II); *accord Mesa*, 543 F3d at 273 (II) (3) (B); *Greene*, 310 F3d at 896 (2); *Gulliford v. Pierce Cty.*, 136 F3d 1345, 1349-50 (9th Cir. 1998); *Gold* , 138 F3d at 888; *Guffey v. Wyatt*, 18 F3d 869, 872 (I) (10th Cir. 1994).

[19] *See Tucker*, 233 Ga. App. at 317 (2) ("In determining if words uttered are such as to incite an immediate breach of the peace, it is not necessary that the State prove the effect of the words upon a particular individual; that is, whether the individual to whom the words were addressed or in whose presence the words were spoken was incited to hostile action. OCGA § 16-11-39 (a) (3) makes no distinction between the types of persons to whom the words are uttered." (punctuation omitted)); *Davenport v. State*, 184 Ga. App. 214, 214-15 (361 SE2d 219) (1987) (same); *Brooks*,

13

suggests that his disrespectful behavior and offensive statements were unaccompanied by physical aggression. Indeed, as previously mentioned, presuming that the officer was properly trained, he may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to react violently to Knowles's insolent statements.[20]

To support its position that the officer had probable cause to arrest Knowles for disorderly conduct, the State relies on two cases in which we upheld convictions for disorderly conduct when the defendant made obscene or profane statements to police officers. But in those cases, the offending statements appear to have been made amid more threatening circumstances than those at issue here (*i.e.*, a one-on-one encounter between Knowles and the arresting officer during a traffic stop in which

---

166 Ga. App. at 705 (same); *Bolden*, 148 Ga. App. at 316 (2) (same); OCGA § 16-11-39 (a) (3) (describing fighting words as "opprobrious or abusive words which by their very utterance *tend to incite* to an immediate breach of the peace, that is to say, words which as a matter of common knowledge *and under ordinary circumstances* will, when used to or of another person in such other person's presence, naturally *tend to provoke* violent resentment . . . ." (emphasis supplied); *see also Chaplinsky*, 315 U.S. at 573 (upholding a state's fighting-words statute as constitutional when, *inter alia*, it was limited to the use of words in publicly that are *likely* to cause of a breach of the peace and noting that the word "offensive" in the statute, as described by the lower court, was not defined in terms of what a "particular addressee thinks") .

[20] *See supra* note 16 and accompanying text.

14

other officers were nearby). For example, in *Bolden v. State*,[21] this Court upheld a conviction for disorderly conduct when the defendant directed a *string* of insults at the officer, calling him a "son of a bitch," a "mother fucker," a "pig," a "motherfucking pig," and a "bastard."[22] And while this Court gave no further details regarding the circumstances in which those insults were made, it appears that, unlike in this case, the confrontation occurred in front of a potentially hostile crowd because, although the defendant was ultimately acquitted of the offense of *inciting a riot*, there was at least some evidence to charge and try her for that offense.[23]

The State also relies on *Brooks v. State*,[24] a case in which the officer encountered the defendant when he was participating in a protest involving claims that certain murder convictions were the result of a police coverup.[25] When the officer asked the protestors to move out of the way of pedestrian traffic, the defendant

---

[21] 148 Ga. App. 315.

[22] *See id.* at 316 (4).

[23] *See id.* at 315; *see also* OCGA § 16-11-31 (a) ("A person who with intent to riot does an act or engages in conduct which urges, counsels, or advises others to riot, at a time and place *and under circumstances which produce a clear and present danger of a riot*, commits the offense of inciting to riot." (emphasis supplied)).

[24] 166 Ga. App. 704.

[25] *See id.*

15

pointed to the police officer—in the midst of protesting an alleged police coverup—and shouted "to a *large crowd of 150 to 200 people*" that "all cops are dogs . . . [t]his man here is a dog."[26] Then, the defendant, in an attempt to resist arrest, "started swinging his arms wildly" at the officer, who ultimately had to radio for assistance.[27] But here, unlike in *Brooks*, Knowles's statements were made during a one-on-one encounter with the officer while two other officers were already nearby, and there is no evidence that Knowles resisted arrest or exhibited any other aggressive or threatening behavior. And in fact, other cases in which we have found that offensive statements to a police officer constituted fighting words typically involved physical threats or insults to the officer, some aggressive conduct by the defendant, or other aggravating circumstances such as the presence of a hostile crowd when the words were spoken.[28]

---

[26] *See id.* at 704-05 (emphasis supplied).

[27] *See id.* at 704.

[28] *See, e.g., Anderson*, 231 Ga. App. at 807-09 (1) (holding that a jury was authorized to find that the defendant's statements—made after she *sought the sheriff out* at *a car dealership*—calling him a "no-good son of a bitch" and *threatening* to "kick [his] ass" were fighting words); *Person v. State*, 206 Ga. App. 324, 325 (1) (425 SE2d 371) (1992) (holding that the defendant's statements constituted fighting words when the defendant used profane, abusive language throughout the encounter with the officer, kept "getting up in his face," screamed in the officer's face that he was

16

In sum, the stipulated facts in this case show that Knowles raised his voice and cursed at a police officer during a traffic stop. While we in no way condone Knowles's use of disrespectful and vulgar language toward a police officer (indeed, we unequivocally condemn this behavior), the particular facts and circumstances of this case—including that the statements were directed to a trained police officer—do not support the trial court's finding that there was probable cause to believe that Knowles uttered fighting words within the meaning of OCGA § 16-11-39 (a) (3).[29]

"not going to any g__ d__n jail and [he was] not wearing any mother-f____g handcuffs," and threatened to "blow the officer's head off" (punctuation omitted)); *Johnson v. State*, 143 Ga. App. 826, 826-27 (240 SE2d 207) (1977) (holding that a defendant's statements to a female police officer amounted to fighting words when, with such a "loud voice" and "abusive tone" that he caused a crowd to gather to "see what the trouble was," he stated "I don't give a damn about you. I don't respect any m_____ f_____ women, especially police women"). *But see Evans*, 188 Ga. App. at 347 (1) (holding, without providing any details regarding the circumstances under which the statements were made, that the defendant's statement calling police officer a "g---d---- liar" and telling all the officers at the scene to "f____ o___ " could be considered fighting words).

[29] *See supra* notes 15-17 and accompanying text; *Delaney*, 267 Ga. App. at 377-78 (holding that the defendant's actions of pulling behind a parked police car, honking his horn, exiting his car, approaching the officer, and "screaming and throwing his hands in the air" did not amount to a violation of OCGA § 16-11-39 (a) (3)); *Turner*, 274 Ga. App. at 732-33 (1) (a) (holding that a defendant yelling "you bastard" at a police officer did not amount to fighting words within the meaning of OCGA § 16-11-38 (a) (3)); *Lundgren*, 238 Ga. App. at 426 (holding that, although the remarks at issue were "rude, crude, and socially unacceptable," they could not be fairly characterized as fighting words in the circumstances and context in which they

17

Thus, for all of the foregoing reasons, we reverse the trial court's denial of Knowles's motion to suppress evidence.

*Judgment reversed. Reese and Bethel, JJ., concur.*

---

were said); *Crolley v. State*, 182 Ga. App. 3, 4 (354 SE2d 864) (1987) (holding that the use of "obscene, vulgar, and profane" words did not amount to fighting words under the circumstances in which they were made); *see also Spiller v. Texas City Police Dep't*, 130 F3d 162, 164 (I), 165-66 (III) (5th Cir. 1997) (concluding that a motorist yelling at an officer to 'move his damn truck' did not constitute 'fighting words"); *Buffkin*., 922 F2d at 472 (III) (B) (holding that the defendant's use of the word "asshole" could not reasonably have prompted a violent response from the arresting officers). *Cf. Biddle v. Martin*, 992 F2d 673, 677-78 (II) (B) (7th Cir.1993) (concluding that disorderly conduct pertained where screaming was accompanied by violent arm movements and the argument was with a physically smaller officer on a deserted highway at 3 a.m.).