[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11437

Non-Argument Calendar

_____

CAROLYN MINCEY,
QUENTINA SONNIER,

                                        Plaintiffs-Appellants,

*versus*

RYAN VARDMAN,
PIEDMONT HEALTHCARE, INC,
HUGHSTON HOSPITAL, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cv-00110-CDL

_____

Before JORDAN, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Carolyn Mincey and Quentina Sonnier appeal the district court's grant of summary judgment to Ryan Vardman, Piedmont Healthcare, Inc., and Hughston Hospital, Inc., in Mincey and Sonnier's 42 U.S.C. § 1983 case. Mincey and Sonnier allege Vardman violated their Fourth Amendment rights when he falsely arrested them while they were visitors at a hospital.[1] Mincey and Sonnier also allege the district court erred in denying them leave to amend. After review,[2] we affirm the district court.

---

[1] Mincey and Sonnier also brought claims under Georgia state law against Vardman, Piedmont Healthcare, Inc., and Hughston Hospital. The district court declined to exercise supplemental jurisdiction over those claims. As we affirm the district court's grant of qualified immunity to Vardman, we need not address the state law claims.

[2] We review a grant of summary judgment *de novo*, drawing all reasonable inferences in the light most favorable to the non-moving party. *Ireland v. Prummell*, 53 F.4th 1274, 1286 (11th Cir. 2022). While we generally review a district court's decision to deny leave to amend for an abuse of discretion, we review *de novo* an order denying leave to amend based on a conclusion of law. *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 (11th Cir. 2015).

## I.  BACKGROUND

On July 7, 2019, Mincey and her daughter Sonnier were in the waiting room of the emergency room (ER) at Piedmont Columbus Northside Hospital in Columbus, Georgia.  Mincey and Sonnier were visiting a sick loved one, and they were each holding one of Sonnier's 10-month-old twins. By chance, some extended family members were also present in the ER visiting a different sick loved one.  Mincey and Sonnier were sitting with several family members, including Patricia Banks, Jariyah Cotton, Alberta Cotton, Nifferteria Parham, Keonte Alexander, Marsha Alexander, and Linda Green.

Vardman was a corporal in the Columbus Police Department, and was working off-duty providing security in the ER on July 7, 2019.  Vardman was wearing his standard issue Columbus Police Department uniform.  Vardman was seated at the front desk of the ER waiting room next to Katharina Spurlock, the ER patient access representative.  Spurlock controlled access to the ER rooms from the waiting area.  At one point, when Spurlock opened the secure doors to allow an authorized visitor into the ER, another unauthorized person also went through the secure doors.  Spurlock expressed her frustration, and Keonte Alexander made a comment to those sitting next to him that "if she didn't like her job, she needs to go find another one."

This led Vardman to get up from behind the desk to address the group.  Keonte Alexander acknowledged he made the comment about Spurlock.  When Vardman told the group to "shut up,"

he did so in an "aggressive and disrespectful" way, that was "rude and loud." Vardman told the group if they were not quiet, they would have to leave.

Mincey and Vardman argued about her behavior and Spurlock's enforcement of hospital policies. Another visitor in the ER waiting room, Keith Wright, videoed some of the encounter on his phone. On the video, the following exchange can be heard:

| | |
|---|---|
| Vardman: | Are we good? |
| Mincey: | Sit down and stop talking to me. |
| Vardman: | Okay. Stand up . . . give the kid to someone . . . stand up. |
| Mincey: | No, I'm not. |
| Vardman: | Do you want to go to jail? |
| Mincey: | Do you? |
| Vardman: | You want to go to jail? Stand up . . . |
| Mincey: | [Inaudible] not bothering you . . . |
| Vardman: | You're not going to do that . . . you're not going to do this . . . no you're not . . . what you're doing is you're causing a scene. |
| Mincey: | No . . . I didn't say anything . . . |
| Vardman: | You are . . . She [Spurlock] is not being rude . . . listen . . . listen . . . what she's [inaudible] is . . . she's [inaudible] policy and procedures . . . there's a reason for it. |

After this first exchange, Vardman returned to the front desk. He again reminded the group he would have to ask them to leave if they did not sit quietly. In response, Mincey gave Vardman a dismissive hand gesture, which Mincey calls the "whatever hand." Vardman then left the desk, and walked back toward Mincey and the group. Mincey testified Vardman stated she needed to leave or she would be arrested. The ER Security Video shows Vardman standing in front of Mincey, who is still holding one of the twins, talking and motioning with his hands. Vardman is then seen walking away and speaking into his radio. This call was recorded. Vardman states "Code 3" and asks for a transport. A "Code 3" is a request for a backup officer. After the radio call, Vardman returned to speak with Mincey. At this point, Wright began filming again.

| | |
|---|---|
| Mincey: | I did not say anything to you . . . |
| Vardman: | You've been asked to leave . . . if you don't leave, you're going to jail. |
| Mincey: | Let's go . . . racist ass motherfuckers . . . I get tired of this shit . . . |
| Vardman: | Not . . . now you're under arrest |
| Mincey: | I'm not . . . I'm not [inaudible] |
| Vardman: | Ma'am stop . . . |
| Mincey: | Do not touch me! |
| Vardman: | Get the child . . . |
| Mincey: | Don't touch me! |
| Vardman: | Give the child . . . give the child . . . oh no, no, no that was too late . . . too late |

> . . . you're jerking the child around
> ma'am . . . stop . . . you know what
> you're doing . . .

While holding the child, Mincey physically resisted Vardman's efforts to arrest her, pushing him as she was leaving. Sonnier, who was also holding a child, placed herself between Vardman and Mincey, and did not comply with Vardman's order to "get out of the way," making it more difficult for Vardman to arrest Mincey. Sonnier also pushed Vardman as he attempted to separate her from Mincey. Throughout the struggle, Vardman directed Mincey and Sonnier to stop using the children to interfere with their arrests. Her resistance resulted in a cut to Vardman's head when Mincey knocked off his sunglasses. Once Mincey and Sonnier finally released the children, Vardman arrested Mincey and Sonnier.

Mincey was charged with misdemeanor disorderly conduct in violation of O.C.G.A. § 16-11-39, misdemeanor criminal trespass in violation of O.C.G.A. § 16-7-21, misdemeanor reckless conduct in violation of O.C.G.A. § 16-5-60, and felony obstruction of an officer in violation of O.C.G.A. § 16-1024(b). Sonnier was charged with misdemeanor reckless conduct and felony obstruction of an officer. At the conclusion of a jury trial, Mincey and Sonnier were acquitted on all charges.

## II. DISCUSSION

To receive qualified immunity, an officer "bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). The plaintiff

then bears the burden of proving "the defendant violated a constitutional right" and "the right was clearly established at the time of the violation." *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012). Because Mincey and Sonnier do not dispute Vardman was engaged in a discretionary function, they bear the burden of proving Vardman was not entitled to qualified immunity.

Mincey and Sonnier claim Vardman is liable under the Fourth Amendment for false arrest. In the context of an arrest, probable cause exists "when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). In assessing whether there was probable cause for an arrest, we "ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Id.* at 902 (quotation marks and alteration omitted). "Probable cause does not require conclusive evidence and is not a high bar." *Id.* at 899 (quotation marks omitted).

An officer need not have actual probable cause, but only arguable probable cause, to receive qualified immunity. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could have believed that probable cause existed to arrest." *Id.* (quotation marks

omitted). "Showing arguable probable cause does not . . . require proving every element of a crime." *Id.*

We begin with discussing Mincey's arrest for disorderly conduct, which is the arrest that preceded the offenses of reckless conduct and obstruction of an officer in Mincey's and Sonnier's arrests. *See Glenn v. State*, 849 S.E.2d 409, 418 (Ga. 2020) ("When an arrest is lawful, of course, the right to resist an unlawful arrest is not pertinent.").

## A. Disorderly conduct

To determine whether there was probable cause or arguable probable cause for Mincey's disorderly conduct arrest, we ask whether a reasonable officer could have concluded there was a substantial chance she had committed the crime of disorderly conduct.

> (a) A person commits the offense of disorderly conduct when such person commits any of the following:
>
> . . . .
>
> (3) Without provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstance will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words"; or
>
> (4) Without provocation, uses obscene and vulgar or profane language in the presence of or by telephone

to a person under the age of 14 years which threatens
an immediate breach of the peace.

O.C.G.A. § 16-11-39(a)(3)-(4).

Vardman had arguable probable cause to arrest Mincey for disorderly conduct. The "totality of the circumstances" is important in this analysis. *See Washington*, 25 F.4th at 898. Mincey frames the probable cause issue solely in response to her profane comment calling Vardman a "racist ass motherfucker" as she attempted to leave the hospital. We agree that Mincey's vulgar language, without more, would not constitute a violation of the statute. *See In re L.E.N.*, 682 S.E.2d 156, 158 (Ga. Ct. App. 2009) ("State law no longer criminalizes the use of unprovoked language threatening an immediate breach of peace, which is obscene, vulgar, or profane, that is directed to a person older than 14 years of age, unless such language also constitutes 'fighting words.'" (quotation marks omitted)). Further,

the fighting-words exception to constitutionally protected speech requires a narrower application in cases involving words addressed to a police officer. This is because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to fighting words.

*Trammell v. State*, 851 S.E.2d 834, 851 (Ga. Ct. App. 2020) (quoting *Knowles v. State*, 797 S.E.2d 197, 201 (Ga. Ct. App. 2017)). Merely insulting an officer is not enough for a disorderly conduct arrest. *See id.*

However, Mincey's words and actions must be put into context. *See Knowles*, 797 S.E.2d at 278-79 ("[W]hen determining whether words constitute fighting words, the circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had a direct tendency to cause acts of violence by others." (quotation marks omitted)). First, Mincey engaged in an argument with Vardman in an ER waiting room where people were waiting for medical care and tensions are often high. In addition to Mincey's family, there were people waiting in the same room to see a medical professional. For example, Lindsey Kyte was waiting to see a medical professional while suffering a serious ear infection and was in severe pain. Second, Mincey continued holding her 10-month-old grandson even after being asked by Vardman to hand the child to someone else. Mincey had several family members around who could have held the child after Vardman asked Mincey to hand the child to someone else. Mincey's actions in the video support that she failed to hand over the child and kept the child to use as a shield. Third, Mincey's obscene and vulgar or profane language was used in the presence of two children under the age of 14 years. Fourth, Mincey used the obscene language in front of the rest of her family, which could threaten a breach of the peace.

A reasonable officer, knowing what Vardman knew at the time, objectively could have believed probable cause existed to arrest Mincey for a violation of O.C.G.A. § 16-11-39(a)(3)-(4). *See Brown*, 608 F.3d at 734. We conclude Mincey's actions of (1) arguing with Vardman in front of a group of her family, (2) while

holding her 10-month-old grandson, (3) in an ER waiting room, and (4) using profane language in the presence of children under 14 years old, could have indicated to an objectively reasonable officer at the scene that Vardman's conduct was disorderly, even if those circumstances were ultimately insufficient to prove a violation of § 16-11-39(a)(3)-(4). *See id*. Consequently, the district court did not err in determining Vardman was entitled to qualified immunity on Mincey's claim for false arrest.

## B. Reckless Conduct and Obstruction of an Officer

Georgia's reckless conduct statute provides, "[a] person who . . . endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that [her actions] will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor." O.C.G.A. § 16-5-60(b). Georgia's obstruction statute provides, "[w]hoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his . . . duties by offering or doing violence to the person of such officer . . . shall be guilty of a felony." O.C.G.A. § 16-10-24(b).

Vardman possessed probable cause to arrest Mincey and Sonnier for reckless conduct and obstruction of an officer. First, Vardman was acting within the lawful discharge of his duties as he had arguable probable cause to arrest Mincey for disorderly conduct. In the course of making that lawful arrest, Mincey, while

holding a 10-month-old child, physically interfered with Mincey's arrest, and Sonnier, while also holding a 10-month-old child, physically interfered with Mincey's arrest.   As the district court stated, "[b]y holding the children during their arrest, [Mincey and Sonnier] put the children in harm's way.  Under these circumstances, Vardman possessed probable cause to arrest them for both reckless conduct and felony obstruction."  Vardman was entitled to qualified immunity as he had probable cause to arrest Mincey and Sonnier for these offenses.[3]

## C.  Leave to Amend

Mincey and Sonnier moved to amend their complaint to add a negligence count 88 days after the amended pleadings deadline, and only two days before the extended discovery deadline expired. The district court denied the motion, concluding they failed to show good cause for filing an amended complaint beyond the deadline established by the scheduling order.  Mincey and Sonnier contend the district court used the wrong standard in denying the motion, asserting the court should have used the Federal Rule of Civil Procedure 15(a)(2) standard of freely giving leave when justice so requires, rather than the Rule 16 "good cause" standard.  Mincey and Sonnier assert the scheduling order's language that any amendments after 90 days prior to the close of discovery "shall require

---

[3] Because we conclude Vardman had arguable probable cause or actual probable cause for at least one charged offense, it is not necessary to address whether the trespass charge against Mincey was supported by probable cause.

leave of Court," required the district court to use the Rule 15 standard.

That the scheduling order referenced "leave of Court" does not implicitly adopt the Rule 15 standard for amendments. "[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998). Mincey and Sonnier filed their motion to amend after the scheduling order deadline—thus, Rule 16's "good cause" standard was the proper legal framework. The district court did not err.[4]

### III.  CONCLUSION

We affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

[4] Mincey and Sonnier do not contend the district court abused its discretion in its good cause finding.