**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 12, 2024**

# In the Court of Appeals of Georgia

A24A0980. DANIELS v. THE STATE.

LAND, Judge.

On this pro se appeal from his conviction after a bench trial on charges of simple battery and disorderly conduct, Tony Daniels argues that the evidence was insufficient and that the trial court erred by failing to make findings of fact and conclusions of law and by imposing a sentence beyond that recommended by the State. We affirm the conviction for simple battery, but we reverse the disorderly conduct conviction because there was no evidence showing that Daniels used any specific "fighting words," which is the only ground alleged in the accusation on that charge, under circumstances tending to result in violence.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

As a preliminary matter, we remind Daniels that although he has the right to represent himself on appeal, that pro se status "does not relieve him of the obligation to comply with the substantive and procedural requirements of the law, including the rules of this Court." (Punctuation and footnote omitted.) *Fortson v. Brown*, 302 Ga. App. 89, 90 (1) (690 SE2d 239) (2010). As was the case in *Fortson*, Daniels's pro se brief "does not contain a single citation to the record," id., in violation of Court of Appeals Rule 25 (c) (2). Daniels has also cited no Georgia law in support of any of his arguments. As we have often noted, including on appeals from a criminal conviction, "it is not the function of this Court to cull the record on behalf of a party in search of

2

instances of error. Instead, the burden is upon the party alleging error to show it affirmatively in the record." (Punctuation and footnote omitted.) *Cawthon v. State*, 350 Ga. App. 741, 743 (830 SE2d 270) (2019). Nonetheless, we have in our discretion reviewed the record, including the transcript of the bench trial, which was transmitted to this Court only after the parties' briefs were filed.

Construed in favor of the judgment, the transcript shows that due to a clerical error, Daniels was granted an appointment at the Valdosta dental office of Dr. Brett Hester on June 29, 2023. Daniels had previously filed a fraudulent claim against Hester concerning a crown replacement. When Daniels appeared for the appointment, Hester attempted to escort him out of the office, which was full of patients and staff, but Daniels became aggressive, insisting that he not be touched, and began filming the encounter, during which his spit landed on Hester's face.

The first of the three videos admitted at trial shows that after Hester gave Daniels some paperwork inside the office and escorted him to the door, Daniels turned outside to leave, saying "Have a good day, sir," at which point Hester leaned toward him and said, "If you ever show up here again, I'll beat the f*** out of you."

As this first video ends, Daniels exclaims, "Don't take my phone, sir!"[1] In the struggle that ensued, which was not recorded, Daniels grabbed Hester's shirt, ripping it and exposing Hester's upper chest. Hester and his staff, who had joined him on the porch, told Daniels to leave and called 911. A later video shows that when a police officer arrived, Daniels was standing in the street by the end of the sidewalk leading to the office. The officer told Daniels to calm down and to get out of the street, but he refused and was immediately arrested. Hester's statement to police does not specify any inflammatory statements by Daniels.

Daniels was charged with simple battery for ripping Hester's shirt and disorderly conduct for using "without provocation . . . opprobrious or abusive words commonly called 'fighting words'" in the presence of Hester. At the conclusion of the bench trial, at which Daniels represented himself, the trial court found that although Daniels' video was "kind of inconclusive," he had ripped Hester's shirt. The trial court then found Daniels guilty of both charges, fined him $2,000, and sentenced him to 24 months probation. This appeal followed.

---

[1] The phone was returned to Daniels moments later. He used it to record the second and third videos in the record.

1. Including the direct testimony that Daniels grabbed Hester, ripping his shirt, the evidence at trial was sufficient to sustain Daniels' conviction for simple battery. See OCGA § 16-5-23 (a) (1) (defining simple battery as "intentionally mak[ing] physical contact of an insulting or provoking nature with the person of another").

2. The evidence was not sufficient to sustain his conviction for "fighting words" disorderly conduct, however, because no testimony or other evidence showed that Daniels directed any specific profanity at Hester under circumstances tending to result in violence.

OCGA § 16-11-39 (a) (3) provides:

> A person commits the offense of disorderly conduct when such person . . . [w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words[.]"

And "fighting words" are defined as "those which by their very utterance tend to incite an immediate breach of the peace." (Punctuation and footnote omitted.)

5

*Knowles v. State*, 340 Ga. App. 274, 277 (797 SE2d 197) (2017). Athough the use of "fighting words" does not constitute constitutionally protected speech, "[n]evertheless, to ensure no abridgment of constitutional rights, the application of OCGA § 16-11-39 (a) (3)'s proscription on 'fighting words' must necessarily be narrow and limited." Id. at 278. "[W]hen determining whether words constitute fighting words, the circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had 'a direct tendency to cause acts of violence' by others." Id.

Here, Hester testified that he could not "recall the specific words" that Daniels used. The officer likewise testified that although the words directed at Hester were "profanity," he could not "remember the exact [expletives]" used. Further, none of the videos included in the appellate record shows Daniels initiating any use of profanity. Indeed, the cell phone taken immediately before the shirt-ripping incident shows that after obtaining some paperwork, Daniels turned to leave, saying "Have a good day, sir," at which point Hester leaned towards the camera and said, "If you ever show up here again, I'll beat the f*** out of you." The only point at which Daniels used a curse word in the videos was in recounting, a few moments later, and

6

from a substantial distance, what had just occurred: "You said 'If you come back I'll kick your motherf***ing ass. That's what you said."

Although Hester testified that Daniels was acting in a threatening way, "circumstances cannot change harmless words into fighting words." (Punctuation and footnote omitted.) *Delaney v. State*, 267 Ga. App. 377, 378 (599 SE2d 333) (2004). The evidence also shows that it was Hester, not Daniels, who threatened violence immediately before the shirt-ripping incident, which does not appear on video. In short, there is no evidence in the record that Daniels ever directed any specific fighting words at Hester under circumstances tending to result in violence. Under these circumstances, we must reverse Daniels' conviction for disorderly conduct. See *Sandidge v. State*, 279 Ga. App. 86, 88-89 (1) (630 SE2d 585) (2006) (defendant's words "Arrest me" and "Damn, I'm calling corporate office" were insufficient under the circumstances to sustain a conviction for fighting words disorderly conduct conviction); *Delaney*, 267 Ga. App. at 378 (defendant's question to officer who had stopped her, "What are you doing parked in the middle of the roadway?" did not constitute fighting words).

*Judgment affirmed in part and reversed in part. Miller, P. J., and Markle, J.,*

*concur.*